UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EVAN LAW GROUP LLC, an Illinois limited liability company | ) ) ) |
| Plaintiff | ) ) |
| v. | ) ) |
| JONATHAN TAYLOR, an individual | ) ) |
| Defendant | ) ) ) ) ) |

# COMPLAINT

Plaintiff Evan Law Group LLC, by and through its attorneys, Daniel M. Purdom, Barry F. Mac Entee and Evan D. Brown, submits its Complaint against Defendant Jonathan Taylor.

## NATURE OF CLAIMS

1. Evan Law Group LLC's ("Evan Law Group") lawsuit against Jonathan Taylor arises under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §1030, for Taylor's violation of the CFAA. In addition to its claim under the CFAA, Evan Law Group has also asserted a claim for breach of fiduciary duty.

## JURISDICTION AND VENUE

2. Federal jurisdiction arises under the CFAA, 18 U.S.C. §1030. Supplemental jurisdiction over the state law claim is based upon 28 U.S.C. §1367.

3. Venue is proper in the Northern District of Illinois. Evan Law Group and Taylor do business in the District, Taylor resides in the District and a substantial portion of the events giving rise to the claims occurred in the District.

## PARTIES

4. Plaintiff Evan Law Group is an Illinois limited liability company.

5. At all relevant times, Defendant Jonathan Taylor has resided at 4423 N. Kildaire Ave., Chicago, IL 60630.

## BACKGROUND FACTS

6. Evan Law Group was founded in approximately 2004. Evan Law Group is a Chicago based law firm that specializes in patent law. It counsels clients on patent rights. Its patent attorneys and patent agents are registered to practice before the United States Patent and Trademark Office ("USPTO").

7. Paul E. Rauch, an attorney licensed by the Illinois Supreme Court and registered to practice before the USPTO, is the managing partner of Evan Law Group. At all relevant times, Rauch has been a member and manager of Evan Law Group. At the time this Complaint is filed, Rauch is the sole manager of Evan Law Group.

8. Between approximately May 1, 2004 and June 29, 2006, Jonathan Blanchard, an attorney licensed by the Illinois Supreme Court and registered to practice before the USPTO, was a member of Evan Law Group. Blanchard worked as a patent attorney during his tenure with Evan Law Group.

9. Between approximately February 1, 2005 and approximately September 17, 2008, Jonathan Taylor was an employee of Evan Law Group. Taylor worked as a patent agent registered to practice before the USPTO during his tenure with Evan Law Group.

10. On June 29, 2006, Blanchard resigned from the Evan Law Group. At this time, Blanchard ceased to be a member or manager of Evan Law Group. On information and belief, in approximately September 2006 Blanchard opened his own law practice, Blanchard & Associates, and

began competing with Evan Law Group. On information and belief, Blanchard & Associates have been competing with Evan Law Group since approximately September 2006. At all relevant times during this period Taylor has been aware that Blanchard & Associates competes with Evan Law Group.

11. On September 16, 2008, Taylor submitted a letter to Rauch giving notice of Taylor's resignation. On September 17, 2008, Taylor was asked to leave the premises of Evan Law Group's office. On information and belief, Taylor became an employee of Blanchard & Associates not later than September 19, 2008.

12. As part of its patent law practice, Evan Law Group has spent substantial time, labor and funds to develop methodologies, strategies and information to assist it in handling its clients' patent matters.

13. Evan Law Group maintains on its server a folder entitled "COMPLETED MASTER LISTS." This folder, consisting of approximately 5 gigabytes of data, includes thousands of scientific articles. The articles are organized into subfolders, with each subfolder corresponding to a collection of related patent applications, referred to as "portfolios", Evan Law Group is prosecuting for clients. Most subfolders contain hundreds of articles. Each subfolder also contains an information disclosure citation document, known as "FORM PTO-1449" listing the full citation of every article within the subfolder. The articles within a subfolder, along with a FORM PTO-1449 listing the full citation of every article within the subfolder, have been filed in each patent application belonging to the corresponding portfolio, as required by rules set forth by the United States Patent and Trademark Office (USPTO). As these scientific articles were collected, they were converted to an electronic format required for electronic filing, and each was given a unique file name using a naming convention developed by Evan Law Group; this naming convention was developed to ease organization and identification of the documents, and to ease determination of accurate and

6472342v1 899437 70285

complete electronic filing of the documents. The preparation of the folder entitled "COMPLETED MASTER LISTS" required hundreds of hours of attorney and paralegal work, and were prepared over the course of years. When a new patent application is determined to be related to the patent applications of an existing portfolio, the articles within the associated subfolder, along with a FORM PTO-1449 listing the full citation of every article within the subfolder, is filed in the new patent application. By possessing the folder entitled "COMPLETED MASTER LISTS," Evan Law Group is able to carry out the filing of the scientific articles and the FORM PTO-1449 in the new patent application, for thousands of dollars less than such a filing would otherwise cost. Therefore, Evan Law Group is able prosecute a new patent application which is related to existing patent applications, for thousands of dollars less than a competing law practice. This cost savings provides Evan Law Group with a competitive advantage in obtaining new business from its clients, and promotes the retention of clients. Improper possession of the folder entitled "COMPLETED MASTER LISTS," or any of the subfolders within this folder, by a competing law practice would allow the competing law practice to avoid the investment necessary for its development, and remove the competitive advantage Evan Law Group enjoys with respects to obtaining new business from clients, and enjoys with respects to retaining clients.

14. On information and belief, Taylor made the decision to leave Evan Law Group and work for its competitor, Blanchard & Associates, at some point during or prior to August 2008. Taylor withheld this information from Evan Law Group. Even as late as September 16, 2008, after Taylor had tendered his letter of resignation, Taylor withheld from Rauch and others at Evan Law Group that he planned to go work for Blanchard & Associates.

15. Between: (a) the time Taylor made the decision to leave Evan Law Group and work for Blanchard & Associates; and (b) the time of Taylor's resignation, Taylor took a number of steps to begin competing with Evan Law Group and began acting contrary to Evan Law Group's

4

interests. During this period, Taylor removed confidential business information from Evan Law Group's computers and concealed his removal of this information. During this period, Taylor also took a number of steps to solicit Evan Law Group's clients to transfer their files from Evan Law Group to Blanchard & Associates.

16. On Friday, August 15, 2008, Taylor was at Evan Law Group's office after normal business hours and accessed his Evan Law Group computer at approximately 9:30 p.m. While an employee of Evan Law Group, Taylor rarely if ever, remained in the office past 5:00 p.m. On information and belief, prior to August 15, 2008, Taylor had never been at the office at such a time (i.e., 9:30 p.m. on a Friday night).

17. At the time Taylor accessed his Evan Law Group computer on the night of Friday, August 15, 2008, no other Evan Law Group employees were at the office.

18. At approximately 9:30 p.m. on August 15, 2008, Taylor connected not less than three electronic storage devices to his Evan Law Group computer via the computer's USB port. These devices had the ability to store and transfer file data. On information and belief, Taylor transferred confidential business information from his Evan Law Group computer to the devices at this time. These transfers were improper, unauthorized and contrary to the interests of Evan Law Group.

19. One of the devices Taylor connected on August 15, 2008 was a SanDisk U3 Cruzer Micro. U3 devices frequently come with software designed to minimize and/or eliminate evidence of their connection to the computer from which data is transferred. On information and belief, Taylor used software that concealed his transfers by deleting files on his computer.

20. On the same day, August 15, 2008, Taylor deleted from his Evan Law Group computer a file folder whose name includes, "COMPLETED MASTER LISTS." Prior to the deletion, this file was on Taylor's desktop. On information and belief, Taylor transferred some or all of the files in the Completed Master List folder (and/or copies of those files), described in

5

paragraph 12, from his Evan Law Group computer to portable storage media. This transfer was improper, unauthorized and contrary to the interests of Evan Law Group.

21. In addition to the August 15, 2008 transfer and deletion activity described above, in the months prior to his departure, Taylor created numerous files for, on information and belief, the purpose of transferring these files from his Evan Law Group computer to his portable storage media, including but limited to the storage devices described in paragraph 17 above. On information and belief, many of the files created were copies of Evan Law Group's confidential business information. The portable storage media in Taylor's possession contain additional evidence of the files created and transferred. Taylor's creation of these files was improper, unauthorized and contrary to the interests of Evan Law Group.

22. Taylor took active steps to conceal his improper file creation, improper file deletion and improper file transfers. In addition to the concealment described above, Taylor took steps to destroy his Even Law Group computer, the computer used to improperly create, delete and transfer files. On August 26, 2008, Taylor dismantled his Evan Law Group computer and tampered with its hard drive. At the time, Taylor attempted to explain away his improper conduct, claiming that he was attempting to install a video card. This explanation was false. Evan Law Group computers, including the one Taylor used, were supported and maintained by Evan Law Group's information technology consultants. Taylor had no legitimate reason for departing from this protocol and dismantling the computer. Taylor dismantled the computer and tampered with the hard drive for the purposes of: (1) copying files from the hard drive; and (2) destroying files on the hard drive and/or making the files inaccessible.

23. Taylor's conduct, described in paragraph 21, caused a number of the files on his Evan Law Computer to be destroyed and/or inaccessible. As a result of this conduct, Taylor's computer had to be replaced altogether. On August 27, 2008, Taylor emailed Evan Law Group's

6472342v1 899437 70285

information technology consultant, Edward Wassman, and thanked Mr. Wassman "for confirming the death of his computer."

24. Prior to the September 16, 2008 tender of his resignation, Taylor took steps to solicit Evan Law Group clients to transfer their files to Blanchard & Associates. On information and belief, prior to September 16, 2009, Taylor either met with and/or talked via telephone with one or more of Evan Law Group's client contacts at the University of Illinois, one of Evan Law Group's then long standing clients. On information and belief, during his contact with the University of Illinois, Taylor encouraged the University of Illinois to transfer files it had with Evan Law Group to Blanchard & Associates.

25. On September 19, 2008, one of Evan Law Group's client contacts at the University of Illinois sent Rauch instructions to transfer four files the Evan Law Group was handling for the University of Illinois to Taylor at Blanchard & Associates. On information and belief, Evan Law Group's loss of these of files was the result of the improper and unauthorized conduct of Taylor while Taylor was an employee of Evan Law Group.

26. Evan Law Group has lost other client files as a result of the improper and unauthorized conduct of Taylor while Taylor was an employee of Evan Law Group.

## COUNT I – VIOLATION OF THE CFAA

27. Evan Law Group re-alleges and incorporates paragraphs 1-26 as and for paragraphs 1-26 of Count I.

28. The Computer Fraud and Abuse Act, 18 U.S.C. 1030, was in effect at all times relevant to the conduct described in this Complaint.

29. The Computer Fraud and Abuse Act prohibits, *inter alia*, individuals from illicitly accessing computers and damaging the computer or the data. The CFAA provides a private right of action to "[a]ny person who suffers damage or loss by reason of a violation of this section may

7

maintain a civil action against the violator to obtain compensatory damages and injunctive relief . . ." 18 U.S.C. 1030(g).

30. The Evan Law Group computer Taylor accessed, improperly transferred files from, improper created files on, improperly deleted files from, dismantled and ultimately destroyed was a protected computer under the terms of the CFAA.

31. At the time Taylor improperly transferred files from, improperly created files on, improperly deleted files from, dismantled and destroyed his Evan Law Group computer, he did not have authority to access the files on the computer. All of this access and all of the improper conduct relating to this access occurred after: (a) Taylor made the decision to leave the employ of Evan Law Group and to work for Blanchard & Associates; (b) Taylor made the decision to compete with Evan Law Group; and (c) Taylor began taking steps to further his interests and the interests of Blanchard & Associates at the expense of the interests of Evan Law Group.

32. Taylor's conduct caused "damage" to Evan Law Group as that term is defined by the CFAA. Taylor's conduct caused an impairment to the integrity and availability of data, programs, systems and information on the computer he dismantled and destroyed, a computer protected from this type of improper conduct by the terms of the CFAA.

33. Taylor conduct caused "loss" to Evan Law Group as that term is defined by the CFAA. Taylor's conduct caused Evan Law Group: to incur costs in responding to Taylor's destruction of the computer; to incur costs in assessing the damages caused by Taylor's conduct; to incur costs in attempting to restore data, systems and information to the status they were in prior to Taylor's conduct; to lose revenue as a result of Taylor's conduct; to incur costs in the form of attorney fees as a result of Taylor's conduct; to incur consequential damages as a result of Taylor's conduct. The loss described above is in excess of $5,000. The fees Evan Law Group paid to third parties to assist Evan Law Group in responding to Taylor's destruction of the computer, in

8

conducting a damage assessment and in attempting to restore the computer are themselves in excess of $5,000.

34. Taylor has in his possession computer(s) and/or portable storage media evidencing the files he improperly transferred from Evan Law Group and the files he improperly destroyed and/or caused to be inaccessible.

### COUNT II – BREACH OF FIDUCIARY DUTY

27. Evan Law Group re-alleges and incorporates paragraphs 1-26 as and for paragraphs 1-26 of Count II.

28. As a patent agent and employee for Evan Law Group, Taylor owed Evan Law Group duties of loyalty, honesty, candor and good faith.

29. Taylor breached these duties by committing the following acts while in the employ of Evan Law Group:

   (a) taking Evan Law Group's business-related documents and information and intellectual property and using this information to solicit Evan Law Group's customers to transfer their files to Blanchard & Associates;

   (b) taking Evan Law Group's business-related documents and information and intellectual property for the purpose of using these materials to further Taylor and Blanchard & Associates' financial interests at the expense of Evan Law Group's interests;

   (c) soliciting Evan Law Group's clients to transfer their files to Blanchard & Associates;

   (d) destroying the computer supplied by Evan Law Group to Taylor for the purposes of: (i) concealing Taylor's removal of business-related documents and information; and (ii) preventing Evan Law Group from accessing the commercially valuable files and electronic information on the computer;

   (e) actively competing with Evan Law Group and/or taking steps to compete with Evan Law Group while an employee of Evan Law Group

30. As a result of Taylor's breaches of his fiduciary duty, Evan Law Group has incurred actual damages.

31. Taylor has in his possession computer(s) and/or portable storage media evidencing the files he improperly transferred from Evan Law Group and the files he improperly destroyed and/or caused to be inaccessible.

WHEREFORE, Plaintiff Evan Law Group respectfully requests the Court enter an Order: (a) entering a permanent injunction requiring Taylor to return all Evan Law Group files and/or records, to destroy all copies of any such files, to cease from accessing any such files; (b) awarding Evan Law Group money damages in an amount to be established at trial; (c) awarding Evan Law Group its reasonable attorney fees and costs, including the costs it incurred in attempting to restore the computer destroyed by Taylor and the costs it incurred in investigating Taylor's improper use of the computer; and (d) awarding Evan Law Group all fees and costs allowed under the CFAA.

Respectfully submitted:

**PLAINTIFF EVAN LAW GROUP LLC**

By: /s/ Barry F. Mac Entee .
    One of the Attorneys for Plaintiff
    Evan Law Group LLC

Dan Purdom (#3122020)
Barry Mac Entee (#6275410)
Evan Brown (#6277187)
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
Phone: 312-704-3000
Fax: 312-704-3001