## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

EVAN LAW GROUP LLC, an Illinois limited   )
liability company,   )
                   Plaintiff,   )   09-CV-04896
                            )   Hon. William T. Hart (assigned)
        -vs-           )   Hon. Arlander Keys (referred)
                            )
JONATHAN TAYLOR, et al.   )   (JURY DEMANDED)
                            )
            Defendants.   )

## ANSWER TO SECOND AMENDED COMPLAINT OF BLANCHARD & ASSOCIATES AND JONATHAN BLANCHARD

Defendants Blanchard & Associates (hereinafter "B&A") and Jonathan Blanchard (hereinafter "Blanchard"), by and through his lawyers, Ciardelli and Cummings and the Law Offices of Steve Ackerman, answer the complaint as follows:

### Jurisdiction and Venue

1.    This Court has federal question jurisdiction under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, the Federal Copyright Act, 17 U.S.C. § 101, et seq., and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. Supplemental jurisdiction for the state law claims is based on 28 U.S.C. § 1367.

*B&A and Blanchard admit the jurisdiction of the Court.*

2.      Venue is proper in the Northern District of Illinois. The principal parties,

Plaintiff Evan Law Group LLC ("Evan Law Group") and Defendants Jonathan Taylor

("Taylor"), Jonathan Blanchard ("Blanchard") and Blanchard & Associates, all do business in

the Northern District of Illinois. Defendant Chi Kiu "Charles" Chan ("Chan") has done business

and resided in the Northern District of Illinois, and does and at all relevant times did business

with all other parties with knowledge that they are located in the Northern District of Illinois.

Taylor and Blanchard both reside in the Northern District of Illinois. A substantial portion of

the events giving rise to the claims herein took place in the Northern District of Illinois.

*B&A and Blanchard admit that venue with regard to B&A and Blanchard is proper.*

### Parties

3.      Evan Law Group is an Illinois limited liability company.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of this allegation and demand strict proof thereof.*

4.      Taylor is an individual who, at all relevant times, resided at 4423 North Kildaire

Avenue, Chicago, Illinois 60630.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of this allegation and demand strict proof thereof.*

5.      Blanchard is an individual who, at all relevant times, was a partner at Blanchard

& Associates, with a place of business at 566 West Adams Street, Chicago, Illinois 60661.

*B&A and Blanchard admit that B&A has a place of business at 566 West Adams Street, Chicago, Illinois 60661, but deny that Blanchard was a partner at B&A at all relevant times.*

2

6.    Blanchard & Associates is an Illinois law firm.

*B&A and Blanchard admit Par. 6.*

7.    Chan is an individual who resides in Hong Kong and is licensed to practice law in Illinois.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations currently and demand strict proof thereof*

### Background Facts

8.    Evan Law Group is a boutique law firm specializing in patent law. It was founded in 2004. Evan Law Group's patent attorneys and patent agents are registered to practice before the United States Patent and Trademark Office ("USPTO").

*B&A and Blanchard admit Evan Law Group was founded in approximately 2004. As to the other allegations, B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations currently and demand strict proof thereof.*

9.    Paul E. Rauch ("Rauch") is a successful patent attorney who has prosecuted innumerable patent applications over nearly two decades, covering a broad spectrum of technologies. He is licensed to practice law in Illinois and Virginia and registered to practice law before the USPTO. Rauch founded Evan Law Group and has been the managing partner of the firm since its inception.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations currently and demand strict proof thereof.*

10.    In or about May 2004, Rauch hired Blanchard to work at Evan Law Group. Between about May 2004 and June 2006, Blanchard was a member of and partner at Evan Law Group. Blanchard worked as a patent attorney during his tenure at Evan Law Group.

3

*B&A and Blanchard admits that in or about May 2004, Rauch hired Blanchard to work at Evan Law Group and that Blanchard worked as a patent attorney during his tenure at Evan Law Group. B&A and Blanchard deny that Blanchard was a member of and partner at Evan Law Group between about May 2004 and June 2006.*

11.     In or about June 2006, Blanchard resigned from Evan Law Group. In June 2006, Blanchard ceased to be a member, manager or partner of Evan Law Group.

*B&A and Blanchard admit Par. 11.*

12.     In approximately September 2006, Blanchard opened a competing law practice, Blanchard & Associates. Blanchard & Associates began competing with Evan Law Group at that time and continues to compete to this day.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demands strict proof thereof.*

13.     In or about February 2005, Rauch hired Taylor to work at Evan Law Group. Between about February 2005 and September 2008, Taylor worked as a patent agent for Evan Law Group and was registered to practice before the USPTO. Taylor was aware of the competition between Evan Law Group and Blanchard & Associates.

*B&A and Blanchard admit that Taylor worked as a registered patent agent at Evan Law Group from about February 2005 to about September 2008. B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of the allegations regarding competition between Evan Law Group and demand strict proof thereof.*

14.     Taylor officially became an employee of Blanchard & Associates no later than September 19, 2008.

*B&A and Blanchard admit Par. 14.*

### Evan Law Group Practices, Procedures and Confidential Business Information

15.     Rauch has spent many years and a substantial amount of money and resources to develop methods, strategies and information to assist his clients in patent matters.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

16.     Evan Law Group maintains on its server a folder entitled "Completed Master Lists." This folder contains approximately five gigabytes of data. Among the data are included thousands of scientific articles. The articles are organized into subfolders that correspond to collections of related patent applications referred to by Evan Law Group as "Portfolios." These Portfolios are associated with specific Evan Law Group clients and specific patent applications Evan Law Group is prosecuting for its clients.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

17.     Each of the scientific articles within the Completed Master Lists was converted, by Evan Law Group staff, to the specific electronic format that is required for electronic filing with the USPTO. Additionally, each article was given a unique file name based on a naming convention developed by Rauch and Evan Law Group. The naming convention facilitates organization and identification of documents, and assists with accurate and complete electronic filing with the USPTO. The organizational system and naming conventions add significant value to both the Portfolios and the Completed Master Lists.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

18.     The selection of the articles in the Portfolios and the Completed Master Lists, the organization of the files, the conversion of the files to proper USPTO filing format, and the naming conventions used by Evan Law Group, required the highly specialized expertise of Rauch in determining what information to include and how that information should be organized. This process required hundreds of hours of attorney, paralegal and other staff work to prepare, costing many thousands of dollars. The collection of information that is now reflected in the Completed Master Lists is the end product of several years of effort by Rauch and Evan Law Group.

*B&A and Blanchard deny that the selection, organization, conversion and naming conventions used by Evan Law Group required the expertise of Rauch. As to the other allegations, B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

19.     The Completed Master Lists and Portfolios enable Evan Law Group to offer its clients patent services, particularly on subsequent related patents, for thousands of dollars less than such services might otherwise cost.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

20.     The completed Master Lists are copyrightable, and certain of the Completed Master Lists are protected by copyrights filed (with registration pending) with the U.S. Copyright Office.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

## Taylor's Departure From Evan Law Group

21.     Taylor was an employee of Evan Law Group from about February 2005 until he resigned in September 2008

*B&A and Blanchard admit Par. 21.*

22.     Prior to resigning from Evan Law Group, but after deciding to resign from Evan Law Group and begin working for Blanchard & Associates instead, Taylor took a number of steps to begin competing with Evan Law Group and to secretly prepare the transfer of clients from Evan Law Group to Blanchard & Associates. These actions were directly contrary to the interests of Evan Law Group. Before he left Evan Law Group, Taylor, among other things, removed confidential business information from Evan Law Group's computers and server and took steps to conceal this removal from Evan Law Group. Taylor solicited Evan Law Group's clients to transfer their accounts from Evan Law Group to Blanchard & Associates.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

23.     On information and belief, prior to September 2008, while Taylor was still an employee of Evan Law Group, Taylor and Blanchard devised a plan in which Taylor would secretly take confidential business information from Evan Law Group and pass that information to Blanchard & Associates. Taylor was also to contact Evan Law Group's clients and solicit them to move their business from Evan Law Group to Blanchard & Associates. Taylor was to take steps to help conceal his activities. Taylor would then resign from Evan Law Group and immediately begin working for Blanchard & Associates.

*B&A and Blanchard deny the allegations of Par. 23.*

24.     In August and/or September 2008, Taylor connected at least one portable electronic storage devices to Evan Law Group computers using the computers' USB ports. Any and all of these devices had the capability to transfer and store electronic data. Additionally, at least one of these devices included software that is specifically designed to minimize and/or eliminate evidence of its connection to any computer.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

25.     On multiple dates in 2008, Taylor transferred confidential information from Evan Law Group's hard drives, desktops and server to the electronic storage devices. Taylor used the software on these electronic storage devices, as well as other software obtained via download and other means unauthorized by Evan Law Group, to conceal the fact that he connected the devices to the computers and transferred files.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

26.     On multiple dates in 2008, Taylor deleted a number of files from Evan Law Group computers. Among these deletions was a file that included in its name "Completed Master Lists."

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

27.     Evan Law Group did not authorize either the copying or the deletion of the files in the manner in which Taylor conducted these activities and said activities were in derogation of Evan Law Group's interests.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

28.     Taylor took steps to intentionally conceal his improper activities involving file transfer, creation and deletion. In addition to his use of software programs designed to conceal his file transfer activities, Taylor also took steps to destroy the Evan Law Group computer and hard drive that he regularly used. This was one of the computers Taylor used for his improper file transfer activity described above. Taylor dismantled his Evan Law Group computer and tampered with the hard drive in violation of Evan Law Group policy.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

29.     As a direct result of Taylor's tampering with the Evan Law Group computer, certain Evan Law Group files on that hard drive were damaged and/or rendered inaccessible.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

30.     Prior to or in September 2008, Taylor met with and/or talked via telephone with one or more of Evan Law Group's client contacts in order to solicit the transfer of those clients' business from Evan Law Group to Blanchard & Associates.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

9

31.     As a direct result of Taylor's solicitation prior to his resignation from Evan Law Group, multiple Evan Law Group clients transferred their files from Evan Law Group to Blanchard & Associates. On information and belief, the loss of these matters by Evan Law Group was a direct result of Taylor's improper conduct.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

32.     When Taylor resigned from Evan Law Group, he did not return his Evan Law Group "smartphone," which contained additional confidential information of Evan Law Group.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

33.     Subsequent to joining Blanchard & Associates, Taylor continued the solicitation of Evan Law Group's clients using the materials stolen from Evan Law Group as a basis of that solicitation.

*B&A and Blanchard deny the allegations of Par. 33.*

34.     As a direct result of Taylor's solicitation after his resignation from Evan Law Group, multiple Evan Law Group clients transferred their files from Evan Law Group to Blanchard & Associates. The loss of these matters by Evan Law Group was a direct result of Taylor's improper conduct.

*B&A and Blanchard deny the allegations of Par. 34.*

35.     Taylor's activities described in Paragraphs 22 to 33, above, were undertaken pursuant to his agreement with Blanchard and with Blanchard's knowledge and approval.

*B&A and Blanchard deny the allegations of Par. 35.*

### Chan's Involvement with Taylor and Blanchard's Conduct

36.     Chan is a patent attorney practicing in the People's Republic of China.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

37.     Before any of them were associated with Evan Law Group, Chan was employed by the same law firm and at the same time as Taylor and Blanchard.

*B&A and Blanchard admit Par. 37.*

38.     Patent prosecution in the United States requires a patent attorney or agent who either resides in the U.S. or is a U.S. citizen. Thus, foreign patent attorneys often contract with a U.S. patent attorney to handle the prosecution of U.S. patent applications on behalf of their clients.

*B&A and Blanchard admit that Patent prosecution in the United States requires a patent attorney or agent who either resides in the U.S. or is a U.S. citizen. As to the remaining allegations, B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of the allegations and demand strict proof thereof.*

39. Prior to Taylor's departure from Evan Law Group, Chan's then employer, the Hong Kong law firm Wilkinson & Grist, frequently contracted with Evan Law Group to serve as U.S. patent agent for Chan's clients. Many of these contracts were ongoing at the time of Taylor's departure.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

40. Shortly after Taylor's departure, Chan assured Evan Law Group that Wilkinson & Grist did not intend to terminate its contracts with Evan Law Group.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of this allegation and demand strict proof thereof.*

41. Chan began, however, to instruct Evan Law Group on a case-by-case basis that he and his employer would handle U.S. patent prosecution instead of Evan Law Group.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of this allegation and demand strict proof thereof.*

42. Rather than handle these prosecutions himself, Chan was in fact having Taylor, Blanchard, and Blanchard & Associates handle the prosecutions.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of this allegation and demand strict proof thereof.*

43. Defendants did not inform Evan Law Group that these prosecutions were being transferred, and took active steps to ensure that Evan Law Group would not receive notice of the transfers.

*B&A and Blanchard deny that active steps were taken to ensure that Evan Law Group would not receive notice of the transfers and are without knowledge or information sufficient*

12

*to form a belief as to the truth of the remaining allegation and demand strict proof thereof.*

44. Defendants often did not file the necessary paperwork with the U.S. Patent and Trademark Office, or filed this paperwork extremely belatedly, leaving Evan Law Group legally responsible for filings over which it had no control, and of which it had no knowledge due to Defendants' actions.

*B&A and Blanchard deny the allegations of Par. 44.*

### Count I — Violation of the CFAA Against Defendant Jonathan Taylor

45. Evan Law Group incorporates the allegations of Paragraphs 1 - 44 as if fully set forth in this Paragraph.

*B&A and Blanchard re-allege and incorporate their answers to Par. 1-44 as and for their answer to Par. 45 of this Count I.*

46. The Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), was in effect at all times relevant to the conduct described in this Complaint.

*B&A and Blanchard admit Par. 46.*

47. The CFAA prohibits individuals from illicitly accessing computers and damaging the computer or the data thereon. The CFAA provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief . . ." 18 U.S.C. § 1030(g).

*B&A and Blanchard admit the quoted language reflects part of the language in 18 U.S.C. 1030(g), but are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and demand strict proof thereof.*

48.     The Evan Law Group computers Taylor improperly accessed, used to transfer confidential business information, used to improperly delete files, and dismantled and/or destroyed, were protected computers as defined by the CFAA.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

49.     Taylor did not have authority to: (i) transfer confidential Evan Law Group files for the benefit of a competing law firm; (ii) create new files using confidential Evan Law Group files for his own use at a competing law firm; (iii) delete Evan Law Group files for the purpose of preventing the discovery of (i) or (ii); or (iv) destroy Evan Law Group computers for the purpose of preventing the discovery of (i) or (ii).

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

50.     Taylor's conduct damaged Evan Law Group as that term is defined in the CFAA. Taylor impaired the integrity and availability of data, programs, systems and information on the Evan Law Group computers and servers that he altered, damaged and/or dismantled.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

51.     As a result of the impairment, Evan Law Group incurred costs in, among other things, responding to Taylor's destruction of the computer; assessing the damages; attempting to restore data that was deleted and/or physically damaged; attempting to restore systems and information to the state they were in prior to Taylor's actions; lost revenue due to Taylor's actions; and attorney's fees to address Taylor's actions. The loss and damages described in this

paragraph well exceed $5,000.00. The fees Evan Law Group paid to third parties to assist Evan

Law Group in responding to the actions of Taylor themselves exceed $5,000.00.

*B&A and Blanchard are without knowledge or information sufficient to form a belief*
*as to the truth of these allegations and demand strict proof thereof.*

52.     Taylor has in his possession computer(s) and/or portable storage devices

showing the files that were improperly taken from Evan Law Group and evidence of files that

were improperly destroyed and/or made inaccessible by Taylor's actions.

*B&A and Blanchard are without knowledge or information sufficient to form a belief*
*as to the truth of these allegations and demand strict proof thereof.*

### Count II — Violation of Illinois Computer Crime Prevention Law Against Defendant Jonathan Taylor

53.     Evan Law Group incorporates the allegations of Paragraphs 1 - 52 as if fully set

forth in this Paragraph.

*B&A and Blanchard re-allege and incorporate their answers to Par. 1-52 as and for*
*their answer to Par. 53 of this Count II.*

54.     The Illinois Computer Crime Prevention Law, 720 ILCS 5/16D-3, prohibits the

knowing and unauthorized tampering with a computer owned by another.

*B&A and Blanchard are without knowledge or information sufficient to form a belief*
*as to the truth of these allegations and demand strict proof thereof.*

55.     As described above, Taylor accessed Evan Law Group's computers in a manner

that exceeded Taylor's authority. Specifically, he intentionally used Evan Law Group's

computers to transfer Evan Law Group's confidential business information, to directly compete

with Evan Law Group, and to assist its competitor, Blanchard & Associates.

15

*B&A and Blanchard deny that Taylor transferred Evan Law Group's confidential business information to B&A. As to the remaining allegations, B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

56.     Taylor also connected portable storage devices to enable those transfers, and at least one of said devices included a program designed to hide or eliminate evidence of its use. Taylor also took steps to delete Evan Law Group's confidential business information from Evan Law Group's computers and servers and intentionally destroyed an Evan Law Group computer.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

57.     Evan Law Group suffered loss as a direct result of Taylor's actions.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

### Count III — Copyright Infringement Against Defendants Jonathan Taylor, Jonathan Blanchard and Blanchard & Associates

58.     Evan Law Group incorporates the allegations of Paragraphs 1 - 57 as if fully set forth in this Paragraph.

*B&A and Blanchard re-allege and incorporate their answers to Par. 1-57 as and for their answer to Par. 58 of this Count III.*

59.     Evan Law Group has filed for copyrights in certain of the Completed Master Lists.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of this allegation and demand strict proof thereof.*

60.     Around August and/or September 2008, Taylor stole those copyrighted materials in the manner described more fully above. Taylor transferred those copyrighted materials to Blanchard and Blanchard & Associates. Defendants then used those copyrighted materials to compete with Evan Law Group and solicit its clients. On information and belief, Defendants also used Evan Law Group's copyrighted materials to prepare derivative works based on the copyrighted materials.

*B&A and Blanchard deny the allegations of Par. 60.*

61.     As a direct result of Defendants' actions, Evan Law Group was damaged.

*B&A and Blanchard deny the allegation of Par. 61.*

### Count IV — Unfair Competition/Misappropriation Against Defendants Jonathan Taylor, Jonathan Blanchard and Blanchard & Associates

62.     Evan Law Group incorporates the allegations of Paragraphs 1 - 61 as if fully set forth in this Paragraph.

*B&A and Blanchard re-allege and incorporate their answers to Par. 1-61 as and for their answer to Par. 62 of this Count IV.*

63.     Evan Law Group has created numerous documents and gathered information, including but not limited to its client lists and contacts and its copyrighted Completed Master Lists, through substantial cost including labor, skill, and money.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

64.     This information and its use is salable for money by Evan Law Group.

*B&A and Blanchard are without knowledge or information sufficient to form a belief*

*as to the truth of this allegation currently and demand strict proof thereof.*

65.     Defendants have misappropriated Evan Law Group's property, and are now using this property to secure clients and selling the use of this property to their own clients, including Evan Law Group's former clients.

*B&A and Blanchard deny the allegations of Par. 65.*

## Count V — Participation in a Pattern of Racketeering Activity Against Defendants Jonathan Taylor and Jonathan Blanchard

66-71. (This Count was dismissed per Order of December 9, 2010).

## Count VI — Conspiracy to Engage in a Pattern of Racketeering Activity Against Defendants Jonathan Taylor and Jonathan Blanchard

72-74. (This Count was dismissed per Order of December 9, 2010).

## Count VII — Breach of Contract Against Defendant Jonathan Taylor

75.     Evan Law Group incorporates the allegations of Paragraphs 1 — 74 as if fully set forth in this Paragraph.

*B&A and Blanchard re-allege and incorporate their answers to Par. 1-74 as and for their answer to Par. 75 of this Count VII.*

76.     Taylor was offered a position at Evan Law Group in 2005 and worked there until September 2008.

*B&A and Blanchard admit Par. 76.*

77.     Under the terms of the agreement made between Taylor and Evan Law Group at the time Taylor was hired (which included an employment letter dated Jan. 4, 2005, as well as supplemental oral agreements), in exchange for a base salary and other valuable consideration, Taylor agreed not to act in derogation of Evan Law Group's best interests. In other words, Taylor promised not to, among other things, compete against Evan Law Group while still an employee, steal its proprietary information, destroy its proprietary information or its computers, or conspire to compete against Evan Law Group and steal its proprietary information.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of this allegation and demand strict proof thereof.*

78.     Under the terms of the agreement made between Taylor and Evan Law Group at the time Taylor was hired, in exchange for a base salary and other valuable consideration, Taylor further agreed to give Evan Law Group a specified period of notice before leaving the firm and accepting employment elsewhere, and for the duration of the notice period to remain an employee of Evan Law Group.

*B&A and Blanchard deny the allegations of Par. 78.*

79.     Under the terms of the agreement made between Taylor and Evan Law Group at the time Taylor was hired, in exchange for a base salary and other valuable consideration, Taylor further agreed to use the business accounts of Evan Law Group to purchase business-related items which would remain the property of Evan Law Group, and which would be returned at the end of Taylor's employment with Evan Law Group.

*B&A and Blanchard deny the allegations of Par. 79.*

80.     Both Taylor and Rauch, as the managing member of Evan Law Group, had the

authority to enter into said contract.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of this allegation and demand strict proof thereof.*

81.     Taylor breached the contract between himself and Evan Law Group. Evan Law

Group fully performed its obligations under the contract.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of this allegation and demand strict proof thereof.*

82.     As a result of Taylor's breach, Evan Law Group was damaged.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of this allegation and demand strict proof thereof.*

### Count VIII — Breach of Fiduciary Duty Against Defendant Jonathan Taylor (in the Alternative to Count VII)

83.     Evan Law Group incorporates the allegations of Paragraphs 1 — 82 as if fully

set forth in this Paragraph.

*B&A and Blanchard re-allege and incorporate their answers to Par. 1-82 as and for their answer to Par. 83 of this Count VIII.*

84.     As an employee of Evan Law Group, Taylor owed Evan Law Group fiduciary

duties of fidelity and loyalty.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of this allegation and demand strict proof thereof.*

85.     In August and September 2008, Taylor was an employee of Evan Law Group.

*B&A and Blanchard admit Par. 85.*

86.    In August and/or September 2008, Taylor transferred confidential information from Evan Law Group computers to the electronic storage devices described above. Taylor used software to conceal the fact that he connected the devices and transferred files from the computers.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of this allegation and demand strict proof thereof.*

87.    Taylor breached his fiduciary duties to Evan Law Group by: (1) taking confidential business documents and intellectual property of Evan Law Group and using that information to compete with Evan Law Group by soliciting its clients to transfer their business to Blanchard & Associates while an employee of Evan Law Group; (2) taking confidential business documents and intellectual property of Evan Law Group in order to further his own personal financial interests and the interests of Blanchard & Associates at Evan Law Group's expense while an employee of Evan Law Group; (3) soliciting Evan Law Group's clients to transfer their accounts to Blanchard & Associates while an Evan Law Group employee; (4) destroying Evan Law Group's computer equipment to conceal his theft of Evan Law Group's confidential business documents and intellectual property while an employee of Evan Law Group; and (5) taking steps to actively compete with Evan Law Group while an employee of Evan Law Group.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of this allegation and demand strict proof thereof.*

88.    As a result of Taylor's breaches of his fiduciary duties to Evan Law Group, Evan Law Group has incurred actual damages.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of this allegation and demand strict proof thereof.*

### Count IX — Tortious Interference with Contracts Against Defendants Jonathan Taylor, Jonathan Blanchard, Blanchard & Associates, and Chi Kiu "Charles" Chan

89.     Evan Law Group incorporates the allegations of Paragraphs 1 - 88 as if fully set

forth in this Paragraph.

*B&A and Blanchard re-allege and incorporate theirs answers to Par. 1-88 as and for their answer to Par. 89 of this Count IX.*

90.     Evan Law Group had valid contracts with its clients and others, including, but

not limited to, the University of Illinois and Wilkinson & Grist to, among other things, file

certain patent applications with the USPTO.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of this allegation and demand strict proof thereof.*

91.     Each of the Defendants knew that these contracts existed.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of this allegation and demand strict proof thereof.*

92.     On information and belief, in or before August 2008, Defendants devised a plan

and agreed to secretly steal confidential business information and intellectual property from

Evan Law Group and to use that information to induce Evan Law Group's clients to breach

their contracts with Evan Law Group and transfer their cases to Blanchard & Associates.

Defendants were able to execute this plan because Taylor was an employee of Evan Law Group

at the time and had access to Evan Law Group's confidential business information and

confidential client information. Taylor was assisted by Blanchard who, as a former partner at

Evan Law Group and architect of its computer system, was able to direct Taylor with respect to

what confidential business documents were needed and how to minimize the chance that Evan Law Group would discover their theft.

*B&A and Blanchard deny the allegations of Par. 92.*

93.     As a result of Defendants' actions, certain clients and others, including the University of Illinois and Wilkinson & Grist, breached contracts with Evan Law Group and moved their cases to Blanchard & Associates.

*B&A and Blanchard deny the allegations of Par. 93.*

94.     Evan Law Group was damaged by these breaches and, among other things, lost income from contracts that were not completed.

*B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

### Count X — Tortious Interference with Business Relationship Against Defendants Taylor, Blanchard, Blanchard & Associates, and Chi Kiu "Charles" Chan

95.     Evan Law Group incorporates the allegations of Paragraphs 1 - 94 as if fully set forth in this Paragraph.

*B&A and Blanchard re-allege and incorporate their answers to Par. 1-94 as and for their answer to Par. 95 of this Count X.*

96.     Evan Law Group had ongoing relationships with its clients and others built over many years.

*B&A and Blanchard admit that Evan Law Group has been in business since 2004 and has ongoing relationships with its clients and others. As to the other allegations, B&A and Blanchard are without knowledge or information sufficient to form a belief as to the truth of these allegations and demand strict proof thereof.*

97.     Evan Law Group had a reasonable expectation that its business relationships

with its clients and others, including, but not limited to the University of Illinois and Wilkinson

& Grist, would continue as valid business relationships.

*B&A and Blanchard are without knowledge or information sufficient to form a belief
as to the truth of these allegations and demand strict proof thereof.*

98.     Blanchard and Taylor were employees of Evan Law Group and were aware of

these long-standing business relationships.

*B&A and Blanchard admit that Taylor and Blanchard were employees of Evan Law
Group. As to the other allegation, B&A and Blanchard are without knowledge or information
sufficient to form a belief as to the truth of the allegation and demand strict proof thereof.*

99.     Chan was an employee of Wilkinson & Grist and was aware of Evan Law

Group's long-standing business relationship with Wilkinson & Grist.

*B&A and Blanchard are without knowledge or information sufficient to form a belief
as to the truth of these allegations and demand strict proof thereof.*

100.    On information and belief, in or before August 2008, Defendants devised a plan

and agreed to covertly steal confidential business information and intellectual property from

Evan Law Group and to use that information to interfere in relationships between Evan Law

Group and its clients for the purpose of preventing those relationships from ripening into

additional legal work for Evan Law Group. Defendants further used this information to lure

these clients to Blanchard & Associates. Defendants were able to execute this plan because

Taylor was an employee of Evan Law Group at the time with access to its confidential business

information and client information. Taylor was directed by Blanchard who, as a former partner

at Evan Law Group and architect of its computer system, was able to direct Taylor with respect

to what confidential business documents were necessary to this plan. Blanchard was also able to instruct Taylor on how to minimize the chance that Evan Law Group would discover this activity. Chan agreed to siphon off work previously contracted to Evan Law Group and instead direct that work, without proper notice to Evan Law Group or the U.S. Patent and Trademark Office, to Blanchard & Associates.

*B&A and Blanchard deny the allegations of Par. 100.*

101.    As a result of Defendants' actions, certain long-standing relationships between Evan Law Group and its clients and others did not ripen into legal work for Evan Law Group. Consequently, Evan Law Group suffered damages from Defendants' interference with these relationships.

*B&A and Blanchard deny the allegations of Par. 101.*

### Count XI — Civil Conspiracy Against Defendants Jonathan Taylor, Jonathan Blanchard, Blanchard & Associates, and Chi Kiu "Charles" Chan

102.    Evan Law Group incorporates the allegations of Paragraphs 1 - 101 as if fully set forth in this Paragraph.

*B&A and Blanchard re-allege and incorporate their answers to Par. 1-101 as and for their answer to Par. 102 of this Count XI.*

103.    On information and belief, in or before August 2008, while Taylor was still an Evan Law Group employee, Defendants devised a plan and agreed to covertly steal confidential business information and intellectual property from Evan Law Group and to use that information for their own benefit. Additionally, Defendants plotted to interfere with the contracts and the business relationships between Evan Law Group and its clients and others for

the purpose of enticing those clients to take their business to Blanchard & Associates. Defendants understood that the information they planned to steal, including, but not limited to, the Completed Master Lists, was valuable and provided Evan Law Group with a substantial business advantage. Defendants were able to execute this plan because Taylor was an employee of Evan Law Group at the time and had access to its confidential business information and client information. Taylor was directed by Blanchard who, as a former partner at Evan Law Group and architect of its computer system, was intimately familiar with Evan Law Group's computer systems and thus was able to direct Taylor with respect to what confidential business documents were necessary to this plan. Blanchard was also able to instruct Taylor on how to minimize the chance that Evan Law Group would discover this activity. Chan agreed to siphon off work previously contracted to Evan Law Group and instead direct that work, without proper notice to Evan Law Group or the U.S. Patent and Trademark Office, to Blanchard & Associates.

*B&A and Blanchard deny the allegations of Par. 103.*

104.     Defendants' theft of confidential business information and intellectual property and their tortious interference with Evan Law Group's contracts and business relationships with its clients were unlawful acts. Taylor and Blanchard's violations of RICO were also unlawful acts. Additionally, Taylor's breaches of his fiduciary duties to his employer Evan Law Group and his violations of the CFAA and the Illinois Computer Crime Prevention Law in order to accomplish Defendants' plans were also unlawful acts.

*B&A and Blanchard deny the alleged acts of Par. 104.*

26

105.    As a result of the conspiracy among the Defendants, Evan Law Group was damaged.

*B&A and Blanchard deny the allegation of Par. 105.*

## Count XII - Unjust Enrichment Against Defendants Jonathan Taylor, Jonathan Blanchard and Blanchard & Associates

106.    Evan Law Group incorporates the allegations of Paragraphs 1 - 105 as if fully set forth in this Paragraph.

*B&A and Blanchard re-allege and incorporate their answers to Par. 1-105 as and for their answer to Par. 106 of this Count XII.*

107.    On information and belief, in or before August 2008, Taylor, Blanchard, and Blanchard & Associates devised a plan and agreed to covertly steal confidential business information and intellectual property from Evan Law Group and to use that information for their own benefit. As a result of their actions, Taylor, Blanchard, and Blanchard & Associates took possession of Evan Law Group's valuable confidential business information and intellectual property, including, but not limited to, the Completed Master Lists. Possessing these documents provides Taylor, Blanchard, and Blanchard & Associates with an unjust business advantage.

*B&A and Blanchard deny the allegations of Par. 107.*

108.    Allowing Taylor, Blanchard, and Blanchard & Associates to retain this information and benefit from it would be unjust and to the detriment of Evan Law Group.

*B&A and Blanchard deny the allegations of Par. 108.*

Respectfully Submitted,

VICTOR F. CIARDELLI   #00444731
CIARDELLI & CUMMINGS
19 W. Jackson Blvd., 3 rd Floor
Chicago, IL.  60605
(312) 346-2522


STEVE ACKERMAN   #0008478
566 W. Adams Street, Suite 600
Chicago, IL.  60661
(312) 454-9300
Attorneys for Defendants


Dated:   December 23, 2010


## **JURY DEMAND**

Defendant requests a jury trial on all issues under Federal Rule 38.

VICTOR F. CIARDELLI
STEVE ACKERMAN