UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EVAN LAW GROUP LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 09 C 4896 |
| | ) | |
| v. | ) | Judge William T. Hart |
| | ) | |
| | ) | Magistrate Judge |
| | ) | Arlander Keys |
| | ) | |
| JONATHAN TAYLOR, ET AL | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Evan Law Group LLC (Evan Law) maintains that
Defendant Jonathan Taylor, prior to resigning from his employment
with Evan Law (but subsequent to his decision to accept new
employment), "took a number of steps to begin competing with Evan
Law Group and to secretly prepare the transfer of clients from
Evan Law Group to Blanchard & Associates," his new employer.
Believing that Mr. Taylor furtively removed confidential,
proprietary information from its computers and servers and also
contacted its clients and requested that they transfer their
accounts to Blanchard & Associates (Blanchard), Plaintiff filed
this action against Mr. Taylor and several other defendants,
including Blanchard.  It alleges violations of the Computer Fraud
and Abuse Act (CFAA), Federal Copyright Act, Racketeer Influenced
and Corrupt Organizations Act (RICO), and Illinois Computer Crime

Prevention Law (ICCPL); unfair competition/misappropriation; breach of contract and fiduciary duty; tortious interference with contracts and a business relationship; civil conspiracy; and unjust enrichment.[1]

The parties began what has turned out to be a contentious discovery period, revealed to some extent by the number of discovery-related motions currently before the Court: Defendant Taylor's Motion to Compel [ECF No. 107], Plaintiff's Motion to Place Documents under Seal [ECF No. 115], Plaintiff's Motion to Compel [ECF No. 120], and a second motion by Plaintiff to compel [ECF No. 131].[2] Also before the Court is Defendant Taylor's Second Amended Petition for Preliminary Injunction. [ECF No. 143]. The Court addresses each in turn below.

## I.    Defendant Taylor's Motion to Compel Production of Plaintiff's Forensic Analysis Report [ECF No. 107]

Defendant Jonathan Taylor moves the Court pursuant to Federal Rule of Civil Procedure 37 to order Plaintiff to produce its forensic analysis report.

---

[1]   In an Opinion and Order dated December 9, 2010, the district court dismissed the claims brought pursuant to the RICO Act and partially dismissed Plaintiff's claims of unjust enrichment. *See Evan Law Group LLC v. Taylor*, No. 09 C 4896, 2010 U.S. Dist. LEXIS 130990 (N.D. Ill. Dec. 9, 2010).

[2]   Defendant's Motion to Compel [126] is also pending. Shortly after its filing but before the Court had occasion to rule, the parties reached a written agreement regarding the hard drive images that are the subject of the motion. Both parties agree that the motion is now rendered moot. Accordingly, Defendant's Motion to Compel is denied.

Federal Rule of Civil Procedure 37(b) authorizes the Court to issue "just orders" where a party has failed "to obey an order to provide or permit discovery." Unfortunately for Mr. Taylor, an evaluation of the Rule reveals the single reason why his motion must fail: the transcript reveals that Plaintiff was not ordered to produce any such report.

On June 11, 2010, the parties appeared before the Court, at which time Plaintiff requested that "the same ground rules . . . apply to both parties." Specifically, it asked that they both be ordered to produce expert reports either after the close of fact discovery or before; Plaintiff strenuously objected to the possibility of being required to disclose its report at the beginning of discovery, if Defendants would be allowed to provide their report at discovery's close. After an at times intense exchange between the parties, Plaintiff offered to proceed in "traditional" fashion – it would supplement its responses as its experts completed their forensic analyses:

| Plaintiff's Counsel: | We're telling [Defendants] the forensic analysis isn't complete. Once it is we'll disclose the additional facts that we learned from that forensic analysis. |
| | |
| | . . . . |
| | |
| | Our answer says, and we represented multiple times on the record now that we are going to give [Defendants] the |

3

substantive – what they
asked for, what [Defendant
Taylor] copied, whether
it's on the backup system,
as soon as we have it from
the forensic analysis,
we'll supplement our
interrogatory answers and
give it to them.

That this is what was agreed to is made even more apparent

by the following exchange:

Defense Counsel:                    Judge, we cannot agree to
                                    have these interrogatories
                                    answered seeking factual
                                    information when they
                                    provide an expert report.
                                    You should require them to
                                    prepare a forensic report,
                                    if necessary, to answer
                                    these interrogatories in
                                    four weeks or six weeks or
                                    whenever it is so that we
                                    can do our merit discovery
                                    keeping in mind the factual
                                    material we're looking for.
                                    So I'm asking your Honor to
                                    order them to go ahead and
                                    prepare the forensic report
                                    now so they can answer the
                                    interrogatories and provide
                                    a factual basis of the
                                    complaint.

Plaintiff's Counsel:                You know, your Honor,
                                    honestly that sounds
                                    reasonable to me with the
                                    exception of turning over
                                    the expert report.  If you
                                    order us to go ahead and
                                    complete our forensic
                                    analysis so that we can
                                    fully answer these in, say,
                                    90 days, 60 days, whatever
                                    we decide to agree on, I
                                    don't think we could –

4

| | |
|---|---|
| The Court: | That will be separate from your expert's report – |
| Plaintiff's Counsel: | Exactly. |
| The Court: | – that's coming at the end of fact discovery. |
| Plaintiff's Counsel: | Exactly.  The expert report can come at the end of fact discovery. |

And by this one:

| | |
|---|---|
| Plaintiff's Counsel: | And so we won't give our expert report which contains the opinion part of this until after the close of fact discovery but the substantive factual stuff that they're asking for in these interrogatories, what was copied, what's on the backup system, you can order us to complete whatever forensic analysis is necessary to answer that. |
| The Court: | Yes. |

While Defendant failed to raise an objection to said proposal during the course of the proceeding, it now relies heavily on the Court's subsequent order that, "The plaintiff will provide a forensic analysis report (not an expert report) in supplementation of its interrogatory answer by 8/15/10." Defendant's reliance, however, is misplaced.  Notwithstanding the minute order, it is clear from the dialogue presented *supra* that Plaintiff was to complete its forensic analyses and use the

information acquired to supplement its responses to Defendant's interrogatories. It simply was not agreed that Plaintiff would produce the forensic analysis report. Consequently, Plaintiff's failure to do so was not in defiance of any court order.

Nor is the Court persuaded by the following language cited by Defendant:

| The Court: | - [T]he forensic analysis done by [Plaintiff's] expert and I'll indicate that that's separate from any expert's report that will come after the completion of fact discovery. And have them produce that to the defendants - How much time will you need to do that? We really want to get this thing moving. |

Because the following dialogue occurred directly thereafter:

| Plaintiff's Counsel: | And I just want to make sure that I'm clear. We'll be producing amended supplemental interrogatory responses that contain everything that's going to come from the forensic analysis, that's correct? |
| The Court: | Right. |

Defendant was silent following this exchange. The time for him to object was then, not now.

Neither is this the time to ask the Court to order Plaintiff to produce documentation that is not the subject of a request. Indeed, in the two interrogatories at issue, Plaintiff was asked

to:

    17.    Identify all data, programs, systems, information, files and file folders that were removed, taken, deleted, impaired, or to which Evan Law Group no longer has access due to Taylor's alleged conduct in 2008; and of this data, programs, systems, information, files and file folders, identify which items were not available on Evan Law Group's computers or backup systems after Taylor's departure from Evan Law Group.

    18.    Identify all facts in your possession supporting the allegations of Par. 29(a) of Count II,[3] and identify by name and last known address and phone number each individual with knowledge of those facts, and identify documents supporting the allegations.

In response to Interrogatory 17, Plaintiff produced listings of computer files it maintains are responsive to the request; in response to Interrogatory 18, it provided additional documents and stated that metadata revealed that the last access dates of certain files were updated in rapid succession, something Plaintiff refers to as the "hallmark of mass copying." Defendant, however, now seeks, *inter alia*, information regarding

---

[3]

  In the original Complaint, Count II alleged a breach of fiduciary duty claim. The relevant subsection states:

    29.    Taylor breached these duties by committing the following acts while in the employ of Evan Law Group:

        (a)  taking Evan Law Group's business-related documents and information and intellectual property and using this information to solicit Evan Law Group's customers to transfer their files to Blanchard & Associates.

chain-of-custody of the computers and electronic storage devices, examiner notes detailing the analysis performed, a summary of the software and procedures used in the forensic analysis, and detailed findings of what supporting evidence was found during the analysis. This information, on its face, is not the subject of either of the two interrogatories at issue, and the Court is somewhat strained in understanding how the documentation that Defendant now seeks is more responsive to the interrogatories than the information provided by Plaintiff.

Defendant argues that Plaintiff's responses are meaningless without a forensic analysis report. Yet, Plaintiff answered the questions that Defendant chose to ask. The Court will not now order Plaintiff to produce a forensic analysis report so that Defendant may "confirm or reject as unsupported" those responses provided by Plaintiff. This is so not only for the reasons discussed but also because the Court finds some merit in Plaintiff's argument that at least some of the information now sought by Defendant is properly included in an expert report.[4] Said report is not yet due. Therefore, Defendant Taylor's Motion to Compel Production of Plaintiff's forensic analysis report is

---

[4] Federal Rule of Civil Procedure 26(a)(2)(B) provides that an expert report must contain, *inter alia*, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them."

denied.

## II.  Plaintiff's Motion to Compel [ECF No. 115]

Plaintiff asks the Court to uphold the Confidential designation of certain documents, and to order the Clerk's office to place previously filed copies of said documents under seal.

"It is beyond dispute that most documents filed in court are presumptively open to the public . . . ."  *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009)(citing *Jessup v. Luther*, 227 F.3d (7th Cir. 2000)).  The public's right to access court records, however, is not unlimited.  *Id.* (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978); *Press-Enterprise Co. v. Super. Ct. of Cal., Riverside Cnty.*, 464 U.S. 501, 510, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984)).  Federal Rule of Civil Procedure 26(c) allows a court – when there is good cause to do so – to enter a protective order, thereby shielding certain documents from the public.  *Id.* (citing *Citizens First Nat'l Bank*, 178 F.3d 943, 945 (7th Cir. 1999)).  On February 3, 2010, such a protective order was entered.  Specifically, the Court entered an Agreed Protective Order (Protective Order), the relevant portion of which states:

> As of the date this Order is entered Evan Law Group agrees to limit its use of the CONFIDENTIAL INFORMATION designation to records referring to, relating to or reflecting the legal services performed by Evan Law Group LLC, and the financial information, health information, insurance information and personal contact information of Evan Law Group LLC, its owners and its

employees.

Plaintiff maintains that, as a result of the Protective Order, certain documents should be designated Confidential. These records include: Plaintiff's Second, Third, and Fourth Amended Responses to Defendant Jonathan Taylor's Interrogatories; Exhibits A-D to Plaintiff's Fourth Amended Responses to Jonathan Taylor's Interrogatories; and the July 29, 2010 Declaration of Edward Wassman. Additionally, it is Plaintiff's position that both the attorney-client privilege and the work-product doctrine require that Mr. Wassman's declaration be shielded from the public. Because some of the records, namely, Plaintiff's second and fourth amended interrogatory responses and Mr. Wassman's declaration, have been publicly filed, Plaintiff requests that the Court order the Clerk to retroactively place the documents under seal.

A review of Plaintiff's second and fourth amended responses to Defendant's interrogatories reveals that they do not fit within the scope of the parties' Protective Order. Indeed, despite the most favorable reading of the responses, the Court finds that their relationship to the categories of documentation afforded protection by the Protective Order is *extremely* tenuous. Plaintiff maintains that the documents contain sensitive, confidential information regarding "the computer systems which make [ELG's legal services to its clients] possible." But this

10

is obviously not the sort of information contemplated by the parties when drafting the order. Nor is there anything contained within the responses that would place Plaintiff's computer systems, clients, or overall business in jeopardy if the documents remain available for public viewing. The documents contain generic details regarding Plaintiff's computer drives, its computers' back-up systems, and methods allegedly used by Defendant to procure Plaintiff's confidential information. This hardly qualifies as classified information in need of protection.

Likewise, the Court declines to allow Exhibits A-D to Plaintiff's fourth amended responses to be designated Confidential. For the most part, the exhibits consist of lists of file names and the manner, or file paths, by which they are stored in Plaintiff's computer system. The lists fail to reveal the substance of client matters. And only in a very attenuated way do they refer to, relate to, or reflect legal services performed by Plaintiff. Because the third amended responses contain "information concerning the revenue obtained from various ELG clients [and] the hours spent by ELG attorneys and staff on certain client projects," however, the Court will allow Confidential designation for these documents.

Plaintiff next asserts three separate grounds for the Confidential designation of Mr. Wassman's declaration. In ¶ 18 of his declaration, Mr. Wassman states:

> Paul Rauch . . . asked me if I thought Taylor
> deliberately tried to get things off of the broken
> computer or that there were any signs of damage to the
> hard drive. I told him that I saw no sign of physical
> damage to the computer or its hard drive and that the
> hard drive worked fine. I also told him that from
> what I saw, I did not believe that Taylor deliberately
> tried to damage anything – the motherboard had failed,
> nothing more.

Both Plaintiff's argument that the declaration is within the
scope of the Protective Order and that it is protected from
public viewing by the work-product doctrine, can be disposed of
in short order. To be sure, it is not clear that the
declaration is related to legal services provided by Plaintiff.
Plaintiff argues that Mr. Wassman's statement concerns its
investigation of Defendant's computer failure. But this is
extremely remote from the instant litigation, especially in
light of Mr. Wassman's views that the computer was not, indeed,
damaged. Further, the Court is not convinced that the
declaration is protected by the work-product doctrine, discussed
*infra*, as the doctrine shields "documents and tangible things."
Plaintiff concedes that what is at issue here is a conversation.

Finally, the Court finds no merit in Plaintiff's argument
that the attorney-client privilege serves to protect the
declaration. The relevant legal standard is presented *infra*,
but it is important to note here that the privilege shields
documents made in confidence by a client to its attorney.
Plaintiff argues that, at the time of the conversation between

12

Dr. Paul Rauch and Mr. Wassman, Dr. Rauch was serving as counsel
to Plaintiff.  But Plaintiff, the entity, could not actually
seek legal advice.  Because nothing to the contrary was
presented to the Court, it presumes that Dr. Rauch (as
Plaintiff's Founding and Managing Partner), was the individual
obtaining legal advice on behalf of Plaintiff, the entity.  To
protect the communications made by Dr. Rauch (in his role as
client) to Dr. Rauch (as counsel) would produce an absurd result
and would be in derogation of the requirement that the privilege
be construed narrowly.

Consequently, Plaintiff's Motion to Compel is granted in
part and denied in part.

III. **Plaintiff's Motion to Compel [ECF No. 120]**

Plaintiff requests that the Court order Defendant to
produce certain documents that Defendant alleges are protected
by the attorney-client privilege and the work-product doctrine.

"The attorney-client privilege protects communications made
in confidence by a client . . . to an attorney, acting as an
attorney, for purpose of obtaining legal advice."  *Sandra T.E.
v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir.
2009)(citing *Upjohn Co. v. United States*, 449 U.S. 383, 394-99,
101 S. Ct. 677, 66 L. Ed. 2d 584 (1981); *Trammel v. United
States*, 445 U.S. 40, 51, 100 S. Ct. 906, 63 L. Ed. 2d 186
(1980)).  While the client is the holder of the privilege, an

13

attorney may assert it on the client's behalf. *Id.* (citing *United States v. Smith*, 454 F.3d 707, 713 (7th Cir. 2006)). "[B]ecause the privilege is in derogation of the search for the truth, it is construed narrowly." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). "[T]he work-product doctrine is 'distinct from and broader than the attorney-client privilege.'" *In re Special September 1978 Grand Jury (II)*, 640 F.2d 49, 62 (7th Cir. 1980)(quoting *United States v. Nobles*, 422 U.S. 225, 238 n. 11, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975)). It shields "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ." Fed. R. Civ. P. 26(b)(3); *see Sandra T.E.*, 600 F.3d at 618 (citations omitted).

After being served with Plaintiff's first set of interrogatories and requests for production of documents, Defendant prepared and provided a fourteen page privilege log which listed many documents that he alleges are protected from disclosure by the attorney-client privilege and the work-product doctrine. Plaintiff objected to Defendant withholding documents (documents which Plaintiff alleges Defendant stole) that were drafted for its then-current clients, and those communications that occurred with Plaintiff's then-current clients, while Defendant was still employed by Plaintiff. Specifically, Plaintiff argued that, while the documents may be protected from

14

outside parties, it was entitled to them because it had been retained to represent the clients in matters directly related to the documents and communications. Despite Plaintiff's protestations, however, Defendant refused to disclose the documents.

With regard to the documents prepared for Plaintiff's clients while Defendant was its employee, and those client communications that occurred prior to Defendant's departure from the firm, for which Defendant now asserts the attorney-client privilege, the Court finds that they are beyond the privilege's reach.[5] The issue boils down to whether the law firm that was initially engaged as counsel and which subsequently prepared the documents and had the communications with the clients, is precluded from viewing those same documents and communications after the client has terminated its relationship with the firm.[6]

---

[5] Mr. Taylor is a patent agent rather than an attorney. However, this fact alone does not preclude application of the attorney-client privilege if appropriate. *See Mold-Masters Ltd. v. Husky Injection Molding Sys.*, No. 01 C 1576, 2001 U. S. Dist. LEXIS 17094 (N.D. Ill. Oct. 22, 2001) ("[W]here legal advice is sought from a patent agent in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or the patent agent . . . .").

[6] It is not clear from the parties' submissions that all clients have completely ended their relationship with Plaintiff. While Defendant claims that they have ("[T]he majority of the documents Taylor seeks to withhold pertain to *former* Evan Law Group clients"), Plaintiff maintains the opposite ("Although some clients transferred some matters to [Blanchard], ELG continues to represent the clients - on other matters for which Taylor seeks

The Court finds that on these facts, it is not. Defendant's arguments to the contrary are problematic on many levels.

Though Defendant now asserts the privilege on behalf of the clients, he asserts it for his advantage, not theirs. It is ironic that he would argue that he does so to protect the clients' interests when, if Plaintiff's allegations of theft are true, he violated the same protections that he now asks the Court to protect. In other words, if Plaintiff's allegations are true, at the time that Defendant transferred the documents, he was, for all practical purposes, an outsider. Though he technically remained employed by Plaintiff, he was procuring files for his new employer, a law firm that had not yet been retained by the clients. Defendant was not concerned with guarding the clients' confidential information then. Consequently, the Court will not allow him to use the privilege to shield himself now.

Further, while there is merit in Defendant's citation to § 9 of the Restatement (Third) of the Law Governing Lawyers in support of his argument that "if a client elects to follow a lawyer who is departing from a firm, the firm must forward any part of the client's file required for the departing lawyer to continue his representation," there is nothing in the passage that commands the former law firm to purge those files (and the

---

to invoke the privilege).

memories of those individuals that worked on the matters). There is an expectation by the clients that there will undoubtedly be at least some remnants of the case file at the firm. But they trust, and rightfully so, that the firm will not subsequently use the materials to their detriment. Likewise, termination of the attorney-client relationship does not absolve a firm's duty to protect its clients' confidential information. To hold otherwise would make a mockery of the legal system.

Finally, the purpose of the privilege "is to encourage full and frank communication between attorneys and their clients . . . ." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981)(citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961)). And to "protect only those disclosures - necessary to obtain informed legal advice - which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403, 96 S. Ct. 1569, 48 L. Ed. 2d 39 (1876). This is not the typical case in which the privilege is asserted. As such, none of the aforementioned concerns for which it was designed to protect, are present. What is present, however, is the need to "promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 383.

The Court also finds that those documents prepared for Plaintiff's clients and those communications had with them

17

during Defendant's employ with Plaintiff – those that Defendant alleges are protected by the work-product doctrine – are discoverable. While it is not clear from Defendant's log whether the documents are within the privilege, the Court declines to request an *in camera* review of the records. It does not have to. To be sure, "[i]n limited situations documents protected as attorney work product are nonetheless discoverable if a party can establish a 'substantial need' for the documents and cannot obtain equivalent materials without 'undue hardship.'" *Sandra T.E.*, 600 F.3d at 622 (quoting Fed. R. Civ. P. 26(b)(3)(A)(ii)). No doubt the documents form the very core of Plaintiff's claims that Defendant stole its confidential client information and used that information to compete with Plaintiff. And Plaintiff has alleged that it has no other means of obtaining the documentation. Consequently, the Court finds that Plaintiff has demonstrated sufficient hardship to overcome the work product privilege.[7]

Plaintiff's motion to compel is, therefore, granted.

---

[7] The Court also notes that at least some of the documents at issue for which Defendant now claims privilege were not entirely his work. Defendant has failed to show which part of the communication that he drafted or how he is able to assert the privilege for that which he did not personally author. *See Sandra T.E.* 600 F.3d at 618 ("the attorney has an independent privacy interest in *his* work product and may assert the work-product doctrine on *his own behalf*.")(emphasis added). In light of the Court's ruling, however, this is of no consequence.

18

## IV.  <u>Plaintiff's Motion to Compel [ECF No. 131]</u>

Plaintiff maintains that Defendant has failed to produce a
number of documents responsive to its requests.  While Defendant
asserts that he is unable to produce some of the records at
issue because they are not in his possession or control,
Plaintiff disagrees, and requests that Defendant be ordered to
produce those documents and the remainder of those that are
responsive to its requests.  The Court addresses each request in
turn.

### <u>Requests 1 and 2</u>

In its first set of production requests, Plaintiff asked
that Defendant:

1.  Produce all Documents, email and correspondence,
    in Your possession, custody or control, exchanged
    between Taylor and Blanchard from February 1, 2005
    through and including September 17, 2008.

2.  Produce all Documents, email and correspondence,
    in Your possession, custody or control, exchanged
    between Taylor and Blanchard & Associates from
    February 1, 2005 through and including September
    17, 2008.

Defendant agreed to produce all responsive documents.  And
now maintains that he did so, with the exception of three emails
which he listed on his privilege log as being protected by the
attorney-client privilege, as legal advice was sought in
connection with them.  Not surprisingly, Plaintiff argues that
the records are not privileged.  There is not sufficient
evidence currently before the Court to determine whether the

emails are, indeed, privileged. Defendant is ordered to produce the documents to the Court for an *in camera* review. Ruling on these emails is, therefore, reserved.

### Request 3

In request 3, Plaintiff requested that Defendant: "Produce all Documents, email and correspondence, in Your possession, custody or control, sent to or from any Evan Law Group email account."

Defendant produced responsive documents and also a privilege log listing five documents that he alleges are privileged. He further represents that additional records are being produced via CD-ROM. Plaintiff challenges the appropriateness of the privilege. Because the issue of whether the documents are privileged was resolved in the Court's ruling on another of Plaintiff's motions to compel [ECF 120], *supra*, Plaintiff's arguments will not be addressed again here. Accordingly, the motion, as it relates to request 3, is denied.

### Request 4

Request 4 sought and Defendant agreed to produce,

4.      all Documents, email and correspondence, in Your possession, custody or control, exchanged between Taylor and any employee, student, agent, contractor, third-party consultant, volunteer or any other representative of the University of Illinois from February 1, 2005 through and including September 17, 2008.

Plaintiff asserts that Defendant produced some documents in

20

its initial production but none in a subsequent one. Because certain emails were not included in Defendant's production but were included in Plaintiff's, it is Plaintiff's position that Defendant failed to produce all responsive documents. Further, Plaintiff maintains that the privilege log contains the description of only a single email regarding transfer of a client's business and it was dated the same day that Defendant began working for Blanchard. Plaintiff finds it "implausible that Taylor's first communication with [the client] . . . regarding his departure from ELG and his employment with Blanchard & Associates transpired on the same day that the University began requesting that [Plaintiff] transfer files to Blanchard & Associates." While this may be true, it does not follow that communication, if any, was in the form of an email. It is entirely possible that they spoke via telephone or even met in person. Defendant has represented to the Court that he has disclosed all of the responsive documents and the Court is entitled to rely on this representation. Especially in light of the fact that reasonableness serves as the basis for Plaintiff's arguments to the contrary. Plaintiff also challenges Defendant's privilege log as it relates to request 4. The Court has decided this issue *supra*.

### Request 6

Request 6 asks Defendant to:

6. Produce all Documents, email and correspondence,
in Your possession, custody or control, exchanged
between Taylor and any current or former client,
representative of any current or former client or
any employee of any current or former client of
Evan Law Group from February 1, 2005 through and
including September 17, 2008.

As with request 4, Plaintiff maintains that Defendant produced some documents in its initial production but none in a later one and goes on to advance arguments identical to those it made with regard to that request. For the same reasons articulated with regard to request 4, the Court denies the motion to compel as it relates to this request.

### Request 7

Defendant objected, on grounds that it was overly broad and unduly burdensome, to Plaintiff's request that it:

7. Produce all documents, email and correspondence,
in Your possession, custody or control, exchanged
between Taylor and any current or former client,
representative of any current or former client or
any employee of any current or former client of
Evan Law Group from September 18, 2008 through and
including the date of production.

Because there is no indication that the parties have consulted with one another in good faith to no avail, the Court denies the motion on this ground. While Plaintiff maintains that it narrowed the request in its motion, this is not acceptable, nor is it, to the Court's knowledge, what the local rule requires.

**Request 29**

In request 29, Plaintiff sought phone records, specifically asking that Defendant:

> 29. Produce all telephone records, in Your possession, custody or control, including, but not limited to lists of all calls placed or received, for any telephone You used from February 1, 2005 through and including September 17, 2008.

Defendant answered that he does not maintain copies of phone records. He stated in his response, however, that he has obtained copies of his home telephone records and will produce them on CD-ROM. He has also requested cellular telephone records and will provide them once they are received. It is so ordered.

**Requests 30, 31, 32**

The relevant requests are as follows:

> 30. Produce all Documents, in Your possession, custody or control that You transferred or directed to be transferred to Blanchard from February 1, 2005 through and including September 17, 2008.

> 31. Produce all Documents, in Your possession, custody or control that You transferred or directed to be transferred to Blanchard & Associates from February 1, 2005 through and including September 17, 2008.

> 32. Produce all Documents, in Your possession, custody or control, referring to, relating to or compromising any request made by any client of Evan Law Group to transfer any files to You or to Blanchard & Associates.

Defendant maintains that he has no documents in response. As there is nothing before the Court that would have it believe

otherwise, it accepts Defendant's representation.

### Requests 34, 35, 36

In response to the following requests, Defendant maintained that it has no responsive documents in its control:

34. Produce all Letters of Referral ("LORs") or any other contract or agreement with the University of Illinois in Your possession, custody or control.

35. Produce all invoices in Your possession, custody or control, for all work You performed from February 1, 2005 through present.

36. Produce all Documents, in Your possession, custody or control, referring to, relating to, or evidencing any client referrals You made to Blanchard, Blanchard & Associates or any other entity in which Blanchard has an ownership interest, either directly or indirectly.

Pursuant to Federal Rule of Civil Procedure 34, a party may request that another party produce designated documents that are in the non-requesting party's "possession, custody or control." With regard to the issue of control, it is "well-settled that a party need not have actual possession of documents to be deemed in control of them." *In re Folding Carton Antitrust Litigation*, 76 F.R.D. 420, 423 (N.D. Ill. 1977)(citing 4A Moore's Federal Practice, para. 34.17, p. 34-98)). Rather, the "test is whether the party has a legal right to control or obtain them." *Id.* (citing *Buckley v. Vidal*, 50 F.R.D. 271 (S.D.N.Y. 1970)). Obviously, this determination is case-specific. *Id.*

Plaintiff maintains that Defendant has the legal right to control or obtain the documents at issue. In support of its

24

argument, it states that Defendant, as one of only two patent agents, is "a principal employee" of Blanchard, and has an extensive professional relationship with it and personal relationship with its founder. These allegations, without more, are not enough for the Court to find that Defendant has a legal entitlement to documents belonging to Blanchard. To do so under these circumstances would be to completely circumvent the protections afforded by Federal Rule of Civil Procedure 45. Pursuant to that Rule, Plaintiff could obtain the documents by issuing a subpoena to Blanchard directly. As a result of this finding, to the extent that Defendant claims not to have control over the documents sought by requests 34, 35, and 36, the Court will not order Defendant to produce them.

**V.    Defendant Taylor's Second Amended Petition for Preliminary Injunction [ECF No. 143]**

Defendant asks that the Court enter an order barring a pending state court proceeding brought by Plaintiff. Plaintiff challenges Defendant's motion on the ground that the relief sought is prohibited by the Anti-Injunction Act.

The Anti-Injunction Act provides that, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 22 U.S.C. § 2283. The Act's "basic purpose is to prevent 'needless friction between state and

federal courts.'" *Mitchum v. Foster*, 407 U.S. 225, 233, 92 S. Ct. 2151, 32 L. Ed. 2d 705 (1972)(quoting *Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co.*, 309 U.S. 4, 9, 60 S. Ct. 215, 84 L. Ed. 537 (1939)). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R.R. Co. v. Bhd of Locomotive Eng'rs*, 398 U.S. 281, 297, 90 S. Ct. 1739, 26 L. Ed. 2d 234 (1970).

In a letter dated September 8, 2010, Dr. Rauch notified Mr. Wassman that he had breached his contract with Plaintiff; the receipt of Mr. Wassman's declaration (discussed *supra*) from Defendant spurred the correspondence. The letter not only advised Mr. Wassman of the breach of his obligation of confidentiality by voluntarily disclosing information to Defendant, but also ordered him to provide Plaintiff "all of the documents and records that [he has] regarding any investigations [he has] ever conducted regarding failures on [Plaintiff's] computer system or any of [Plaintiff's] computers." Though Dr. Rauch informed Mr. Wassman of Plaintiff's intent to file suit against him, he offered him a get out of jail free card – if Mr. Wassman signed the letter, thereby acknowledging that confidentiality is material to his contract, and failed to commit any further breaches, Plaintiff would not bring the charges.

After Mr. Wassman failed to sign and return the letter, or respond in any manner, Plaintiff brought suit against him in the Circuit Court of Cook County, alleging breach of contract and fiduciary duty, violation of the ICCPL, and negligence.

Defendant argues that the "state court action is an end-run around this Court's authority and an attempt to have a state court judge decide *ex parte* issues pending before this Court." Specifically, "whether the Wassman Declaration contains privileged or confidential communications and whether [Mr. Wassman] is or is not free to discuss with Taylor or his counsel matters in his Declaration, his knowledge of the ELG/Taylor dispute, and ELG's Rule 26 statement."

Defendant maintains that the "necessary in aid of [the Court's] jurisdiction" exception of the Act allows entry of the injunction. The Court disagrees. "Necessary in aid of its jurisdiction" has been held to mean that "federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R.R. Co.*, 398 U.S. at 295. While this exception has historically applied to parallel state in rem proceedings only, it has been expanded, in limited fashion, to encompass school desegregation cases and consolidated multidistrict litigation. *Winkler v. Eli Lilly &*

27

*Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996)(citations omitted). The instant case obviously does not fit within these parameters.

Nor does the Court find that there exist any other compelling grounds that would warrant placing this case within the confines of the exception. Indeed, the Court's ruling regarding Mr. Wassman's declaration renders moot, Defendant's argument that the state court proceeding would interfere with the Court's resolution of the matter. And the Court is not convinced that the state court proceeding places what is tantamount to a gag order on Mr. Wassman, because the presence of a duty of confidentiality does not serve to protect communication compelled by the courts. Plaintiff concedes as much – "[a]ny compelled disclosure, for instance in response to a court order, would not be a breach of our contract." Finally, the Court does not conclude that the state court litigation was brought as a means of harassing or intimidating Mr. Wassman. Plaintiff alleges claims against Mr. Wassman that, if true, are extremely serious, allegations that go above and beyond those alleged against Defendants in the instant litigation. To be sure, in this case Mr. Wassman is but a witness that may be called in an effort to disprove certain of Plaintiff's allegations. In the state case, however, he is the principal (and only) participant and is alleged to have taken some actions that are separate and distinct from those claimed in the case at bar. Plaintiff is entirely

28

within its rights to pursue its claims against him without inference by this Court. Consequently, Defendant's Second Amended Petition for Preliminary Injunction is denied.

### Conclusion

For the reasons set forth above, Defendant Taylor's Motion to Compel [ECF No. 107] is denied, Plaintiff's Motion to Place Documents under Seal [ECF No. 115] is granted in part and denied in part, Plaintiff's Motion to Compel [ECF No. 120] is granted, Defendant Taylor's Motion to Compel [ECF No. 126] is denied, Plaintiff's second motion to compel [ECF No. 131] is denied, and Defendant Taylor's Second Amended Petition for Preliminary Injunction [ECF No. 143] is denied. Defendant is directed to submit to the Court for *in camera* inspection, by January 13, 2010, the three emails listed on his privilege log as being protected by the attorney-client privilege.

Date: January 6, 2011      E N T E R E D:

MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT